**11-4649-cv**
*Ackerson v. City of White Plains, et al.*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: October 29, 2012     Decided: November 29, 2012)

Docket No. 11-4649-cv

SHAWN ACKERSON,

*Plaintiff-Appellant*,

—v.—

CITY OF WHITE PLAINS, POLICE BUREAU OF WHITE PLAINS, STEPHEN FOTTRELL, INDIVIDUALLY AND IN HIS CAPACITY AS SERGEANT IN THE POLICE BUREAU OF WHITE PLAINS, ERIC FISHER, INDIVIDUALLY AND IN HIS CAPACITY AS A LIEUTENANT IN THE POLICE BUREAU OF WHITE PLAINS, JOHN DOE, WHOSE TRUE NAME IS NOT KNOWN TO PLAINTIFF, INDIVIDUALLY AND IN HIS CAPACITY AS AN OFFICER IN THE POLICE BUREAU OF WHITE PLAINS,

*Defendants-Appellees.*

Before:

WESLEY, CHIN, *Circuit Judges*, LARIMER, *District Judge*.[*]

---

[*] The Honorable David G. Larimer, of the United States District Court for the Western District of New York, sitting by designation.

Appeal from a September 27, 2011 judgment of the United States District Court for the Southern District of New York (Duffy, *J.*), granting Appellees' motion for summary judgment and dismissing the case in its entirety. Plaintiff-Appellant was arrested for third-degree menacing under New York law and brought an action against the Appellees for false arrest, malicious prosecution, and violation of his constitutional rights under 42 U.S.C. § 1983. Appellant also sued the City of White Plains under § 1983 for failure to train and supervise the arresting officers. Appellant asks us to vacate the judgment, reverse the district court's grant of summary judgment for Appellees on qualified immunity grounds, reverse the denial of his motion for partial summary judgment as to liability on his false arrest claims under New York law and § 1983, and reverse the denial of his motion for partial summary judgment dismissing Appellees' probable cause defense. Appellant also asks us to reverse the district court's grant of summary judgment for the City of White Plains under § 1983. We reverse in part and affirm in part.

REVERSED IN PART, AFFIRMED IN PART.

---

David Gordon, Gordon & Harrison, LLP, Harrison, NY, *for Plaintiff-Appellant*.

Frances Dapice Marinelli, Joseph A. Maria, P.C., *for Defendants-Appellees*.

---

PER CURIAM:

Plaintiff-Appellant Shawn Ackerson appeals from a September 27, 2011 judgment of the United States District Court for the Southern District of New York (Duffy, *J.*), granting Appellees' motion for summary judgment and dismissing the case in its entirety. The panel has reviewed

the briefs and the record in this appeal and agrees unanimously that oral argument is unnecessary because "the facts and legal arguments [have been] adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." Fed. R. App. P. 34 (a)(2)(C).

## Background

On Thursday, November 8, 2007, Ackerson was arrested for third-degree menacing because he approached a woman in her driveway, questioned her about members of her household, and insisted that her car had hit his.  This "conversation" ended with the woman demanding that Ackerson leave.  The woman then called the police.  The following are the relevant, undisputed facts as the officers knew them at the time of the arrest.

Officer Cotto responded to the woman's complaint and filed the following report:

> a white male [named] Sean [sic] Ackerson came to [the woman's] house . . . claiming that the vehicle she was driving sideswiped his earlier that day in Eastchester. Ackerson told her that he got her address via her license plate.  [The woman] told Ackerson that her husband had been . . . driving her car earlier that day to a contracting site in Eastchester. [The woman] later found out from her husband that the site he is working from is the

3

residence of Sean [sic] Ackerson's [e]x-girlfriend . . . whom Ackerson has been stalking. [The woman] was fearful that Ackerson might harm her and she called the police; Ackerson disappeared. Report was referred to Lt. Fisher for follow up and [the woman] will be in later to give a statement.

JA 111. White Plains Lieutenant Eric Fisher became aware of this incident from Eastchester Detective Anthony Mignone. Mignone called Fisher to tell him that, while investigating an assault involving Ackerson, he learned that Ackerson may have been at a house in White Plains that day. Fisher then checked the computer dispatch system and came across Cotto's report. Cotto eventually spoke with Fisher and said the woman

had pulled into her driveway in her vehicle. When she was exiting her vehicle, a male suspect approached her from behind, ask[ed] her if she lived [t]here . . . . He asked her questions about her vehicle possibly sideswiping his vehicle earlier in the day in Eastchester. He then approached her and asked her a question about her child. She said that she became nervous. She didn't know who this subject was. She then ran into the house shortly thereafter. The subject then fled in his car.

JA 242-43.

Fisher called Mignone and told him there had been an incident involving Ackerson in White Plains. Mignone told

4

Fisher that they planned on arresting Ackerson. Fisher then spoke with the woman who confirmed everything Fisher had learned up to that point.

Eventually, Fisher sent White Plains Sergeant Stephen Fottrell to the Eastchester Police Department to interview Ackerson. Ackerson apologized for scaring the woman and indicated that he had suspected his ex-girlfriend was cheating on him with someone who lived at the woman's residence. When Fottrell asked how he learned the woman's address, Ackerson became uncooperative and stopped answering questions.

Fottrell then called Fisher, who directed him to arrest Ackerson for menacing. In his deposition, Fisher stated that he believed Ackerson's actions constituted third-degree menacing because

> the fact that all of the information that I had developed, coupled with the fact that he had obtained her address and name, drove to her house, approached her in her driveway, got out of the car, approached her in her driveway while she was getting out of the car alone and just getting out of the hospital, by asking her questions relative to her family and her children, by approaching her in the driveway, to the point where she needed to call her neighbor to stand by outside with her *because of the fear that this unknown subject put in her*, I believe that constituted a menace.

5

JA 108(emphasis added). Fottrell also believed the conduct supported an arrest for menacing because:

> Mr. Ackerson approached a woman in the driveway of her home, called her by name, accused her of having a car accident with him and leaving, started asking her questions about the ages of her children. And at this time, he was within two to three feet of her. *Mr. Ackerson is a large individual, which I believe placed the complainant in fear of her safety*.

JA 127(emphasis added).

After arresting Ackerson, Fottrell asserted the following in an accusatory instrument for third-degree menacing:

> **FACTS**: The defendant . . . did place [the woman] in fear of physical injury by following her to her residence and interrogating her about ownership of her vehicle. The defendant claims the victim's vehicle had side swiped his earlier in the day.

JA 25. Fottrell's post-arrest report does not deviate from the above synopsis and adds that at one point the woman asked a neighbor to stay nearby while Ackerson was in her driveway.

Ackerson was prosecuted on the misdemeanor information in White Plains City Court. Ackerson was arraigned on

November 9, 2007 and released on his own recognizance.  The court dismissed the information on January 31, 2008 on the ground that it failed to make out the crime of third-degree menacing.

Ackerson filed a complaint in the Southern District of New York alleging false arrest and malicious prosecution claims against Fisher and Fottrell under § 1983 and the City of White Plains alleging that the White Plains Police Bureau failed to train and supervise the officers under § 1983 (the "*Monell* claim").  The complaint also asserted false arrest and malicious prosecution claims under New York law against all defendants.  After cross-motions for summary judgment, the district court granted summary judgment for the City on the *Monell* claim, dismissed all claims against the White Plains Police Bureau, and denied the motions in all other respects.  Ackerson then moved for reconsideration of his partial summary judgment motion—conceding that there were no material issues of fact.  On September 22, 2011, the district court concluded that the defendants were entitled to qualified immunity as a matter of law and dismissed all of his claims.  Judgment was entered consistent with that order, and Ackerson appealed.

## Discussion[1]

### I.   Federal and State False Arrest Claims

### A. Probable Cause

"A § 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted).  Under New York law, an action for false arrest requires that the plaintiff show that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975).

Probable cause "is a complete defense to an action for false arrest" brought under New York law or § 1983.  *Weyant*, 101 F.3d at 852 (internal quotation marks and citation omitted).  "Probable cause to arrest exists when the officers have . . . reasonably trustworthy information as to[] facts and circumstances that are sufficient to warrant

---

[1] "We review de novo a district court's ruling on cross-motions for summary judgment, in each case construing the evidence in the light most favorable to the non-moving party." *White River Amusement Pub, Inc. v. Town of Hartford*, 481 F.3d 163, 167 (2d Cir. 2007).

a person of reasonable caution in the belief that an offense has been . . . committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). In deciding whether probable cause existed for an arrest, we assess "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). Whether probable cause existed for the charge "actually invoked by the arresting officer at the time of the arrest" is irrelevant. *Id*. at 154. "Accordingly, Defendants prevail if there was probable cause to arrest Plaintiff[] for any single offense." *Marcavage v. City of New York*, 689 F.3d 98, 109-10 (2d Cir. 2012). The same is true under New York law: probable cause "does not require an awareness of a particular crime, but only that some crime may have been committed." *Wallace v. City of Albany*, 283 A.D.2d 872, 873 (3d Dep't 2001).

Appellees have not provided us with a theory of criminal liability, other than third-degree menacing, for which probable cause might have existed to arrest Ackerson. *See e.g.*, *Holley v. County of Orange*, 625 F. Supp. 2d 131, 139 (S.D.N.Y. 2009). We therefore limit our discussion to

9

whether defendants had probable cause to arrest Ackerson for third-degree menacing.

**B. Third-Degree Menacing**

In New York, "[a] person is guilty of menacing in the third degree when, by ***physical menace***, he or she intentionally places or attempts to place another person in fear of death, imminent serious physical injury or physical injury." N.Y. Penal Law § 120.15 (emphasis added). The defendant must take a ***physical*** action with the ***intent*** to make another reasonably afraid of an "***imminent*** danger; that is, the perceived danger must be immediate." *Holley*, 625 F. Supp. 2d at 138 (emphasis added) (citations omitted); *see* William C. Donnino, *Practice Commentary*, *McKinney's Consolidated Laws of New York*, Penal Law § 120.15.

Oral statements alone do not constitute a physical menace and must be accompanied by a physical action beyond approaching someone to talk with them. *See People v. Whidbee*, 803 N.Y.S.2d 20 (N.Y. Kings Cty. Crim. Ct. 2005). In *Whidbee*, the court noted that "the only pertinent allegations . . . are that the defendant approached the complainant, questioned her about her current relationship status, followed her and told her that if she called the

10

police again she had better watch her back and her children's back." *Id.* Those actions were insufficient to sustain a menacing charge because "the only physical act alleged . . . [was] that the defendant followed the complainant." *Id.* Moreover, third-degree menacing requires a well-founded fear of imminent physical injury. When a complainant fails to testify to actually being in fear of injury, the evidence is insufficient to sustain a menacing conviction. *See People v. Peterkin*, 245 A.D.2d 1050, 1051 (4th Dep't 1997).

Here, there was no probable cause for the third-degree menacing arrest by Fisher and Fottrell. Ackerson approached the woman, came within a few feet of her in her driveway, asked her questions, and left. Before deciding to have Ackerson arrested, Fisher had the benefit of Cotto's report, a conversation with Cotto, and a conversation with the complainant. Other than general statements as to not knowing "what, if anything, [Ackerson] was capable of," the woman never stated that she felt physically threatened or that Ackerson took any assaultive actions. The accusatory instrument also did not contain any accusations amounting to a **physical menace**, noting only that Ackerson followed "her to her residence" and interrogated her "about ownership of

her vehicle."[2]  JA 25.  Ackerson's alleged conduct did not even rise to the level of a verbal threat, must less a physical act that would reasonably have placed the complainant in fear of imminent physical injury.  Thus, the district court should have granted Ackerson's motion for partial summary judgment on Appellees' probable cause affirmative defense.

## II.  Qualified Immunity

Qualified immunity is a complete defense to false arrest claims.  An arresting officer is entitled to qualified immunity even when, as in this case, probable cause to arrest does not exist, "if he can establish that there was 'arguable probable cause' to arrest."  *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004).

"Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Id.* (internal quotation marks omitted).  In this

---

[2] The accusatory instrument itself is insufficient on its face; Fottrell failed to provide reasonable cause to believe that the defendant committed the offense charged.  *See* N.Y. Crim. Proc. L. §§ 100.40(1)(b), (4)(b).

12

respect, the qualified immunity test "is more favorable to the officers than the one for probable cause." *Id.* The test is not toothless, however: "If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007).

Here, after noting that third-degree menacing "generally involve[s] more direct threats of physical harm than the present case," the district court proceeded to grant summary judgment for defendants on the theory that Fisher and Fottrell were entitled to qualified immunity. *Ackerson v. City of White Plains*, No. 08 Civ. 9549 (KTD), 2011 U.S. Dist. LEXIS 107383, at *4 (S.D.N.Y. Sept. 20, 2011). The district court excused the arrest because

> Ackerson, a large man, approached [the woman] at her home, placed himself within a few feet of her, and asked questions about her children, an arresting officer could reasonably conclude that Ackerson's approaching [the woman] was an action that made [her] fear for her physical well-being. Similarly, based on [the woman's] statement that she became "nervous," felt need to yell to a neighbor that she might need him to call the police, assumed Ackerson was stalking his ex-girlfriend and

13

"became very afraid suspecting that this person was capable of anything," one could reasonably conclude that she had a fear of imminent harm."

*Id.* at *4-5.

The district court's analysis elides the key legal requirement for a third-degree menacing charge: A ***physical menace***. Police officers of reasonable competence could not disagree over whether probable cause existed without that crucial element.[3] Being tall, approaching someone, and asking them questions (even in an accusatory tone) does not arguably satisfy the elements of any crime.

We conclude that the district court erred in granting summary judgment for the defendants and dismissing the entire action on a theory of qualified immunity. Having decided that neither probable cause nor arguable probable cause existed for the arrest as a matter of law, we also conclude that the district court erred in denying Ackerson's motion for partial summary judgment as to liability on his false arrest claims against Fisher and Fottrell. Defendants concede that there are no material disputed facts, and they

---

[3] In fact, the Assistant Chief of Police for the White Plains Police Department stated in her deposition that she could "see how [the event] was very frightening, but there is nothing there about him taking a physical action in any way that may have caused the fear." JA 289.

14

have not argued that they had probable cause to arrest Ackerson for any other crime.  Moreover, because Ackerson's state law false arrest claim creates liability for the City of White Plains, under a theory of *respondeat superior*, Ackerson is also entitled to partial summary judgment as to that defendant.  *See Raysor v. Port Auth. of N.Y. & N.J.*, 768 F.2d 34, 40 (2d Cir. 1985); *Williams v. City of White Plains,* 718 F. Supp. 2d 374, 381 (S.D.N.Y. 2010).

Lastly, we affirm the district court's grant of summary judgment on the *Monell* claim, as well as the dismissal of the malicious prosecution claims.  Ackerson appealed the *Monell* claim but only made passing references to it in his opening brief.  Moreover, Ackerson has not contested the dismissal of his malicious prosecution claim under either New York Law or § 1983.  *See Tolbert v. Queens College*, 242 F.3d 58, 76 (2d Cir. 2001); *see also Frank v. United States*, 78 F.3d 815, 833 (2d Cir. 1996), *vacated on other grounds by*, 521 U.S. 1114 (1997).

## Conclusion

For the foregoing reasons, the judgment of the district court is **VACATED.**  The order of the district court granting summary judgment to all defendants on the theory that Fisher

15

and Fottrell were entitled to qualified immunity is hereby **REVERSED;** denying partial summary judgment on Ackerson's state law false arrest claims against Fisher, Fottrell, and the City of White Plains is **REVERSED;** and denying partial summary judgment for Ackerson against Fisher and Fottrell under § 1983 for false arrest is **REVERSED.** We **AFFIRM** the district court's grant of summary judgment for Defendants-Appellees on the *Monell* claim and the dismissal of all malicious prosecution claims under New York law and § 1983. The case is **REMANDED** with instructions to grant Ackerson's motion for partial summary judgment on liability for his state law false arrest claims against Fisher, Fottrell, and the City of White Plains; against Fisher and Fottrell under § 1983 for his false arrest claims; and for the dismissal of the affirmative defenses of probable cause.